**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent, | ) | Case No. 13 C 148 (03 CR 689-2) |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| MAGIN VILLASENOR, | ) | |
| Movant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pro se movant Magin Villasenor, sentenced after a trial to 300 months imprisonment, moves the court to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. Villasenor first argues that trial counsel failed to communicate a plea offer that he would have accepted and that would have resulted in a sentencing range of 78 to 97 months and failed to advise him properly regarding other plea offers. Second, he argues that his counsel was ineffective because counsel failed to investigate a witness who would have provided an alibi. Third, he challenges the admission of recorded telephone conversations with his brother and claims that counsel's objections to this evidence were constitutionally ineffective. Fourth, he claims that the government engaged in prosecutorial misconduct by soliciting false testimony from Stevie Jones, a witness who testified about purchasing drugs from Villasenor, and that counsel was ineffective because he failed cross-examine Jones adequately. Finally, he argues that his sentence violated his right to have a jury determine the application of a mandatory minimum sentence under *Alleyne v. United States*, 133 S.Ct. 2151 (2013). For the following reasons, the court will hold an evidentiary hearing on Villasenor's first claim but his remaining claims are unavailing.

# I. BACKGROUND

Villasenor was charged in a multi-count superseding indictment with one count of conspiracy to traffic illegal drugs in violation of 21 U.S.C. § 846, one count of illegally possessing a firearm in violation of 18 U.S.C. § 922(g)(1), and multiple counts of distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1) and of using a communication facility (the telephone) in committing a felony narcotics offense in violation of 21 U.S.C. § 843(b).

Villasenor, through his attorney Joseph R. Lopez, entered a blind plea of guilty without a plea agreement. Villasenor subsequently moved to vacate his guilty plea. Over the government's objection, the court granted Villasenor's motion to vacate his guilty plea and Villasenor proceeded to trial. A jury acquitted Villasenor of three charges but convicted him of conspiracy to distribute or possess with intent to distribute more than 5 kilograms of cocaine, illegal possession of a firearm, and multiple distribution and telephone counts. The court sentenced Villasenor to a 300 month term of imprisonment.

Villasenor (still represented by attorney Lopez) filed a direct appeal with the Seventh Circuit arguing that: (1) insufficient evidence supported the jury's finding that he was involved in a conspiracy instead of multiple buyer-seller relationships; (2) insufficient evidence established that he constructively possessed a gun found in his Chicago apartment because he was in Texas when law enforcement found the gun; (3) because his brother had been a government informant, the district court abused its discretion by admitting his brother's statements as co-conspirator admissions; and (4) the district court erred in denying his motion for a new trial because the government suppressed favorable evidence that could have been used to impeach the testimony of a DEA chemist who testified about drug residue found on a scale

recovered from the bedroom of a co-conspirator. *United States v. Villasenor*, 664 F.3d 673, 679 (7th Cir. 2011).

The Seventh Circuit affirmed Villasenor's conviction. Villasenor filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on October 1, 2012. Villasenor's § 2255 motion, which he signed on December 31, 2012, was filed on January 1, 2013.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a person convicted of a federal crime may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see also Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (internal quotations omitted). Post-conviction relief is "an extraordinary remedy" because a petitioner has already "had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). It is neither a substitute for a direct criminal appeal nor a means by which a defendant may appeal the same claims a second time. *See Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007).

Thus, if a movant fails to raise a claim on direct appeal, that claim is barred in a collateral proceeding under § 2255 unless the movant can demonstrate cause for the procedural default and actual prejudice from the failure to appeal. *See Sandoval v. United States*, 574 F.3d 847, 850-51 (7th Cir. 2009). Because claims of ineffective assistance of counsel usually involve evidence outside of the trial record, however, these claims may be raised for the first time in a § 2255

motion. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). When deciding a § 2255 motion, the court views the evidence "in a light most favorable to the government." *United States v. Galati*, 230 F.3d 254, 258 (7th Cir. 2000).

### III. ANALYSIS

**A.** **Ineffective Assistance**

To establish ineffective assistance of counsel, Villasenor must show that: (1) his trial attorney's performance "fell below an objective standard of reasonableness" and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 688. If Villasenor cannot establish one of the *Strickland* prongs, the court need not consider the other prong. *See Strickland*, 466 U.S. at 697.

**1.** **Plea Offers**

"[T]o succeed on a claim that counsel's ineffective assistance led him to reject the Government's plea offers," a habeas movant "must show not only that [his attorney] acted in error, but also that – had [his attorney] provided competent advice – there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted it, and that the conviction or sentence or both would have been less severe than the judgment imposed." *Foster v. United States*, 735 F.3d 561, 566 (7th Cir. 2013) (citing *Lafler v. Cooper*, 132 S.Ct. 1376, 1384-85 (2012)). Villasenor contends that his attorney, Joseph Lopez, failed to communicate a plea offer whereby if Villasenor pleaded guilty to distribution of from to two to four kilograms of powder cocaine, he would face a sentence of from 78-97 months. He also argues that attorney Lopez failed to advise him properly regarding other plea offers.

### a. The Alleged 78-97 Month Plea Offer

With respect to the purported plea offer of 78-97 months, Villasenor avers that this offer was first presented to him not by his attorney but by his wife Nicol. According to Villasenor, his wife told him that Lopez planned to come to the MCC and present the offer to Villasenor. Villasenor alleges that "on the following Monday" (it is not clear on what date Nicol advised Villasenor of the plea offer), he called Lopez and told him that he would accept this plea offer. Lopez, however, told Villasenor that the plea offer had been withdrawn because Villasenor had taken too long to accept it. Lopez additionally said that he had been too busy to visit Villasenor at the MCC. With respect to other plea offers extended by the government, Villasenor avers that he would have accepted these offers but for the advice of attorney Lopez, who told him that the government's case was "very weak" and that Villasenor's chances of winning at trial were "very good."

The government's response is perplexing to say the least. It argues that Villasenor's request for relief should be rejected because, after the time he claims that his attorney failed to provide him with the plea offer in question, he entered a blind guilty plea, but then sought to withdraw his plea and go to trial, which he was permitted to do. How the fact that Villasenor subsequently pled blind and then withdrew his plea and went to trial undermines his allegations is unclear to the court.

In *Missouri v. Frye,* 132 S.Ct. 1399 (2012), the prosecutor communicated two alternative plea deal proposals to defense counsel on November 15, 2007. The letter stated that both offers would expire on December 28. Frye's counsel never communicated the offers to Frye.

On January 4, 2008, Frye entered a plea of guilty without an agreement. He pleaded guilty to a felony, rather than a misdemeanor offered as one of the plea alternatives, and received a longer sentence than he would have received had he accepted either of the offers. Pretermitting the many complex issues that can arise in assessing counsel's effectiveness during plea bargaining, the Supreme Court held that "in general,":

> defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused . . . When defense counsel allowed] the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires.

*Id*. at 1408.

In *Lafler v. Cooper*, 132 S.Ct. 1376 (2012), decided on the same day as *Frye*, the Court held that when ineffective assistance results in the rejection of a plea offer (or as in *Frye,* its expiration), prejudice under *Strickland* exists even when the defendant ultimately is convicted at trial. In such circumstances, the Court held, "the trial caused the injury from the error." *Id*. at 1386. The reason, as Villasenor's averments demonstrate, is that "the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence." *Id.*

Villasenor has alleged a situation very much like that involved in *Frye*. He avers that his attorney told his wife that an offer had been made, that Villasenor immediately told his wife that he would accept the offer, and that (in the absence of any communication from his attorney) when he called his attorney a few days later to communicate his desire to accept the offer, his attorney told him that too much time had elapsed and the government had withdrawn the offer. Villasenor's papers make clear, if they are to be believed, that the offer was never communicated

to him by his counsel, and that it was not communicated to him in time for him to take advantage of it.  That is essentially the situation involved in *Frye*, and states a case for ineffective assistance of counsel.  Villasenor's averments also establish prejudice, under the test of *Lafler v. Cooper*.

The government says nothing which contradicts Villasenor's allegations.  Further, Villasenor says that he has proof of his averments, in the form of tapes of his telephone calls at the MCC, when he told his wife that he wanted to accept the agreement.  The putative fact that after the alleged offer was withdrawn, he pleaded guilty blind and then decided he wanted to withdraw his plea and go to trial, is irrelevant to the question of whether there was a better offer which his lawyer failed to communicate to him in a timely manner.  Villasenor is entitled to a hearing at which he can attempt to prove these allegations.  *See Estremera v. United States,* 724 F.3d 773, 778-79 (7th Cir. 2013).

### b. The Other Alleged Plea Offers

Villasenor next asserts that he would have accepted two other plea offers of thirteen and fifteen years but for his attorney's representations that the government's case was weak and that he had a very good chance of winning at trial.  According to his supporting affidavit, had he known that the government's case was strong, he would have accepted either the thirteen or fifteen year plea offer.  The government does not address this argument.

The Supreme Court has noted that it is difficult "to define the duty and responsibilities of defense counsel in the plea bargain process" because "[t]he art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision."  *Frye*, 132 S.Ct. at 1408 (quoting *Premo v. Moore*, 131 S.Ct. 733, 741

(2011)). "Bargaining is, by its nature, defined to a substantial degree by personal style. The alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." *Id*.

The government's failure to respond to Villasenor's arguments about the two other purported plea offers is regrettable. Based on the current record, the court cannot determine if attorney Lopez's performance with respect to these purported plea offers satisfies the performance prong of *Strickland*. With respect to the prejudice prong, historically, the Seventh Circuit has held that an affidavit that merely states that a plea offer was made and that counsel provided sub-par advice is insufficient to warrant an evidentiary hearing. *See Gallo-Vasquez v. United States,* 402 F.3d 793, 798 (7th Cir. 2005) (holding that a movant must attach "a copy of the proposed agreement, state when or by whom the offer was made," and provide supporting details); *see also Foster*, 735 F.3d at 566-67 (collecting cases holding that a movant seeking § 2255 relief based on alleged ineffective assistance of counsel relating to a plea offer "must offer objective evidence that he would have accepted the plea agreement but for his attorney's poor performance").

Nevertheless, the Seventh Circuit has recently questioned whether this standard remains good law. *Foster*, 735 F.3d at 567. Specifically, in *Foster*, the Seventh Circuit declined to decide whether a movant's "single, self-serving statement" about a rejected plea offer was enough to show prejudice under *Strickland*. *Id*. Instead, the Seventh Circuit noted that a standard requiring the movant to point to objective evidence supporting his position had a "lack of firm support in subsequent case law." *Id*. Thus, to determine if the movant had satisfied

*Strickland*'s prejudice prong, the Seventh Circuit evaluated the district court's determination regarding the movant's credibility. *Id*.

As in *Foster*, Villasenor has presented a "single, self-serving statement" about alleged plea offers that he rejected based on the advice of counsel. The court will allow Villasenor to develop this claim in a hearing. *See Estremera,* 724 F.3d at 778-79 (stating that because a movant's "affidavit may not show the whole picture" or may be untruthful, "[t]he way to find out what happened is to hold a hearing at which both [the movant] and his lawyer can testify about what passed between them before [the movant] rejected the [plea] offer and decided to go to trial").

### 2. Failure to Investigate Alibi Witness

Villasenor argues that Lopez's failure to investigate a witness who would have provided an alibi rises to the level of ineffective assistance of counsel. Specifically, Villasenor contends that Lopez should have interviewed and then called Villasenor's brother Alex to testify. Alex, according to Villasenor, would have provided an alibi so the jury would not have concluded that Villasenor met Gabriel Maldanado (a co-conspirator cocaine supplier) in Mexico to discuss drug deliveries and pricing. Even if the court accepts that Lopez knew about the suggested alibi defense and did not interview Alex, Villasenor would not be entitled to habeas relief because calling Alex to testify would not have affected the outcome of the trial.

As noted by the government, the meeting in Mexico was not Villasenor's only tie to Maldanado. Maldanado testified that he traveled to Chicago in connection with a sale to Villasenor and made a second trip to pressure Villasenor to pay him for cocaine he had sold him. To establish these other trips, the government presented (among other things) records from

hotels in Chicago that corroborated both of Maldanado's visits to Chicago. The records also showed that Villasenor arranged for the one of the hotel stays and that Maldanado called Villasenor from his hotel room. In addition, an intercepted phone call captured Villasenor telling another brother (Carlos) that he used to go to Texas with "the guys" and "Gabriel" (Maldanado) and that "the guys" were robbed. (Def. Pet., Exh. E, Call 1672, at 2-3.) Finally, when Maldanado was arrested in Texas with kilos of cocaine that he testified were destined for Villasenor, Maldanado's wallet contained pieces of paper with Villasenor's phone numbers on them.

In response, Villasenor correctly notes that "there is a world of difference between knowing someone, and being in a criminal conspiracy with someone." (Dkt. 5, Pet. Reply, at 5.) The evidence outlined by the government, however, goes far beyond merely showing that Villasenor and Maldanado knew each other. Given that the court must view the evidence in the light most favorable to the government, *Galati*, 230 F.3d at 258, the court cannot find the failure to investigate and call Alex at trial to provide an alibi for the meeting in Mexico was prejudicial. Thus, Villasenor's claim of ineffective assistance of counsel relating to his alibi defense is unavailing.

        3.        **Telephone Conversations**

Next, Villasenor argues that the admission of recorded telephone conversations with his brother Carlos violated his constitutional rights. He also criticizes counsel's response to this evidence, contending that Lopez did not object on the ground that the recorded conversations involved a different conspiracy. Villasenor unsuccessfully challenged the admission of the

conversations on direct appeal. *See Villasenor*, 664 F.3d at 681-82. He cannot relitigate this issue via a § 2255 motion. *See Varela*, 481 F.3d at 935.

Approaching the admissibility issue from another angle, Villasenor contends that his attorney should have objected to the phone conversations on the grounds that they highlighted Carlos' participation in a larger, unrelated conspiracy in which Villasenor had no involvement. Villasenor cites the following exchange from a June 23, 2003, telephone call as an example:

| | |
|---|---|
| Carlos: | They went to a house and they got 3.2 [million]. |
| Petitioner Villasenor: | Oh really, so they were watching them? |
| Carlos: | I guess, and in the ocean, we lost 12 large ones [millions]. |
| Petitioner Villasenor: | [WHISTLES] |
| Carlos: | They're coming from all the other place. |
| Petitioner Villasenor: | Hum. |
| Carlos: | That's put a big dent in me right now. |
| Petitioner Villasenor: | Well yeah! |
| Carlos: | Like a mother fucker. [PAUSE] |
| Petitioner Villasenor: | Fuck. |
| Carlos: | Because that was mine. |

(Dkt. 1, Pet. Brief, at 10, quoting Gov't Ex. #2817 at 3-4) (bracketed inserts replicated from Villasenor's filing.)

According to Villasenor, this call discusses the seizure of $3,200,000 and $12,000,000 worth of cocaine at sea, leaving "[t]he unmistakable impression" that because Carlos and Villasenor "were allegedly co-conspirators in the smaller FBI investigation [that was the subject

-11-

of the trial], they were also co-conspirators in the huge international drug smuggling operation." (*Id*. at 10.) He contends that his attorney should have objected to this conversation on the grounds that it was a separate uncharged conspiracy involving uncharged acts and that the failure to do so resulted in the improper admission of the conversation (and other unspecified conversations like it). (*Id*.; *see also* Dkt. 5, Pet. Reply, at 6 ("Had Attorney Lopez objected to the admittance of the phone conversations on the basis that they were outside 801(d)(2)(E) as part of a separate conspiracy as verified by FBI agent DePodesta, this Court would have surely excluded them").)

The problem with this argument is that although it is cast as an ineffective assistance claim, at heart, it is in fact a claim that this court erred when it found that Carlos' statements in intercepted telephone conversations were admissible as co-conspirator statements pursuant to Rule 801(d)(2)(E). As noted above, the Seventh Circuit considered and rejected this claim, explaining that "Carlos was a co-conspirator acting in furtherance of the conspiracy" who "sought to help [Villasenor] acquire large quantities of cocaine so that it could then be distributed." *Villasenor*, 664 F.3d at 682. The claim that Villasenor's conversations with Carlos related to a different conspiracy is revisionist history. As such, counsel cannot be faulted for his failure to object on this ground. *See Yu Tian Li v. United States*, 648 F.3d 524, 527-28 (7th Cir. 2011).

Similarly, Villasenor's claim that FBI Agent DePodesta testified that he believed that the criminal activity underlying the probe against Carlos Villasenor was "separate" from the criminal activity underlying the charges against Magin Villasenor is an inaccurate summary of the record. DePodesta testified that he believed that the phone conversations that the

government sought to introduce were not relevant to Carlos' informant work with the DEA and were, therefore, "separate for [sic] the charges underlying the trial." (*United States v. Villasenor*, 03 CR 689-2, Dkt. 762, Transcript Vol. I, p. 24.) Thus, DePodesta did not opine that there were two separate conspiracies. For all of these reasons, Villasenor is not entitled to § 2255 relief based on the admission of recorded telephone conversations between him and Carlos.

**B.     Prosecutorial Misconduct**

Villasenor contends that the government engaged in prosecutorial misconduct by soliciting false testimony from Stevie Jones, a witness who testified about purchasing drugs from Villasenor. Relatedly, he argues that attorney Lopez was ineffective because he failed to cross-examine Jones adequately. Villasnor's arguments are based on Jones' testimony that Jones purchased cocaine from Villasenor between January 1998 to "[a]round the spring of '98 or the beginning of the summer of '98." (Dkt. 1, Pet. Brief, at 14-15.) Villasenor contends that this testimony was false, and that the government knew or should have known that it was false, because Villasenor was incarcerated in a state boot camp "between January and April/May of 1998 when the illicit relationship is said to have commenced, and then increased in scope." (*Id*. at 15.)

"To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [the court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Yu Tian Li*, 648 F.3d at 527-28 (citing *Strickland*, 466 U.S. at 689). Jones' testimony about the timing of certain purchases was equivocal as he expressly stated that he bought drugs "around" the spring or early summer of 1998. The qualifier "around" means

that the alleged discrepancy between this timeline and the period when Villasenor claims he was in a boot camp does not exist. This is especially true given that Villasenor himself qualified his estimate of when he was in a boot camp program by estimating that he was released in "April/May of 1998." (Dkt. 1, Pet. Brief, at 15.)

Thus, Villasenor has failed to show that Jones' testimony was false. This means that his prosecutorial misconduct claim is meritless. In turn, this means that Villasenor's claim of ineffective assistance of counsel based on Lopez's failure to correct the "false" testimony is unavailing.

**C.**     *Alleyne*

Villasenor's last argument is based on *Alleyne v. United States*, 133 S.Ct. 2151 (2013). In *Alleyne*, the Supreme Court held that "[w]hen a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." *Id*. at 2162. According to Villasenor, his sentence violated his right to have a jury determine the application of a mandatory minimum sentence.

*Alleyne* postdates Villsenor's direct appeal. Thus, it can form the basis of § 2255 relief only if it is retroactively applicable to cases on collateral review. The Seventh Circuit "has predicted that the Supreme Court will not declare *Alleyne* to be retroactive and has itself declined to apply *Alleyne* retroactively until the Supreme Court does." *Willis v. United States*, No. 13 C 9299, 2014 WL 3705346, at *3 (N.D. Ill. July 23, 2014) (citing *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013)); *see also United States v. King*, No. 13 C 5927, 2014 WL 3558759, at *2 (N.D. Ill. July 14, 2014) ("Seventh Circuit precedent indicates that *Alleyne* is

unavailable to defendants . . . [who] present their arguments on collateral review"). Thus, *Alleyne* provides no succor to Villasenor. *See Simpson*, 721 F.3d at 876.

In any event, the government notes that the jury's verdict form shows that the jury found that Villasenor was responsible for more than 5 kilograms of cocaine and that this finding – not facts determined by the court – triggered the mandatory minimum. (Dkt. 535, Jury Verdict.) Villasenor did not address this argument in his reply memorandum. (Dkt. 15, Pet. Amended Reply.) Based on the jury's finding about drug quantities, even if *Alleyne* was available, it would not help Villasenor. Thus, Villasenor is not entitled to habeas relief based on *Alleyne*.

### IV. CONCLUSION

For the above reasons, the court will hold an evidentiary hearing on movant Maglin Villasenor's claims that attorney Joseph Lopez failed to advise him, in a timely manner, of a plea offer that would have resulted in a sentencing range of 78-97 months and failed to advise him properly regarding two other plea offers of thirteen and fifteen years. The remaining grounds for relief in Villasenor's § 2255 motion are denied. The court will issue a separate order that appoints counsel for the purpose of the evidentiary hearing and sets a status date.

Date: November 12, 2014                         /s/
                                                Joan B. Gottschall
                                                United States District Judge